Booth, Ghief Justice,
delivered the opinion of the court:
The special jurisdictional act appearing in Einding 1 discloses the nature of this case as one between the Choctaw Nation of Indians and the United States growing out of' an Indian treaty and an act of Congress.
The facts, not open to. dispute, disclose that on April 26, 1906 (34 Stat. 137), Charles F. Winton and others were by a special jurisdictional act authorized to sue in this court to recover upon the basis of quantum meruit for services rendered and expenses incurred “in the matter of the claims of the Mississippi Choctaws to citizenship in the Choctaw Nation.” Bobert L. Owen was an associate of Winton, and, as such, active in securing the passage of legislation which resulted in granting to Mississippi Choctaws the right of citizenship in the Choctaw Nation.
The estate of Winton and a large number of other representatives of Mississippi Choctaws. — -the latter being authorized to sue under an amendment to the act of April 26, 1906, passed May 29, 1908 (35 Stat. 457) — filed q>etitions in this court to i-ecover compensation for their respective services rendered to Mississippi Choctaws in securing their identification by the Dawes Commission and subsequent enrollment as members of the Choctaw Nation. The litigation was exclusively a controversy as to whether the plaintiffs were entitled to recover for services rendered during the prolonged existence of the contest over the rights of Mississippi Choctaws under Article XIV of the treaty of September 27, 1830 (7 Stat. 333), known as the “Dancing Babbit Creek treaty.”
This court on May 29, 1916, dismissed the petitions as to all parties plaintiff. Estate of Winton et al. v. Amos et al., 51 C. Cls. 284. The Supreme Court on appeal reversed the judgment of this court as to the claim of Bobert L. Owen and associates, remanded the case for further find *54 ings of fact in accord with the opinion of the court (255 U. S. 373), a-nd thereafter this court in pursuance of the order of remand awarded to Robert L. Owen and associates a judgment for $175,000 in accord with the terms of the special jurisdictional act.
September 22, 1922 ( 42 Stat. 1048, 1053), Congress appropriated by the following enactment the sum of $175,000 in satisfaction of said judgment, viz:
The Secretary of the Interior is hereby authorized to pay to Robert L. Owen and associates, who are plaintiffs in the case of Wirt K. Winton, administrator of Charles F. Winton, deceased, and others, against Jack Amos and others, in case numbered 29821, the sum of $175,000, out of any funds now or hereafter due the Mississippi Choctaws under the judgment of the Court of Claims rendered on June 12, 1922, in favor of the above-cited plaintiffs against the Mississippi Choctaws; meeting the deficiency out of the reserve for unpaid Choctaw per capita funds and reimbursing the same out of the funds hereafter due said Mississippi Choctaws per capita.
November 12, 1922, the cashier and special disbursing agent for the Five Civilized Tribes in Oklahoma, of which the Choctaw Nation was one, paid by check to Robert L. Owen $175,000, in satisfaction of the judgment of this court. The above official determined the individual contributions due from Mississippi Choctaws at $106.45, and from official records ascertained that $35,843.25 was to be charged to the individuals whose accounts disclosed sufficient funds on hand to pay the $106.45 and the general fund of the Choctaw Nation was credited with the above amount, leaving due this fund from the Mississippi Choctaws the sum of $139,156.75, advanced by the nation to pay the judgment.
The source of income to the Choctaw Nation, as stated by the cashier and disbursing officer, was “Indian moneys, proceeds of labor, Choctaw unallotted lands,” and from this source since November 1922 there has been collected - from year to year from individual Mississippi Choctaws and credited to the general fund of the nation the further sum of $74,026.03, leaving due from the Mississippi Choctaws a balance of $65,130i.72.
*55 The grounds for recovery alleged in plaintiff’s original petition were that the Mississippi Choctaws were not entitled under the Dancing Rabbit Creek Treaty to participate in the per capita distribution of the communal funds of the Choctaw Nation, and that the per ccupita distribution made to them by officials of the United States was without warrant of law and hence recoverable.
In the case of the Choctaw Nation v. United States, 81 C. Cls. 1, the court in an opinion held that the Mississippi Choctaws in virtue of Article XIV of the Dancing Rabbit Creek Treaty and subsequent acts of Congress, were entitled to a per capita share of the communal funds of the Choctaw Nation. On November 25, 1935 (296 U. S. 643), the Supreme Court denied certiorari. The plaintiff now concedes the final determination of this issue.
The contention now advanced is that while the Congress possesses plenary authority to administer Indian tribal lands and funds, the effect of what was done amounted to a confiscation of plaintiff’s tribal funds, which of course would be illegal. To sustain the contention an argument is made that there may never be sufficient funds from the sale of the communal property of the tribe to enable the Mississippi Choctaws to pay the balance due the nation, and that manifestly no obligation existed upon the part of the nation to pay the judgment awarded.
The fallaciousness of the contention is apparent. The plaintiff falls into the error of asserting a possibility of a default in reimbursing the nation for its advancements without proof of the exhaustion of assets from which the balance can be paid. At the present time funds of the nation have not been confiscated. They have, it is true, been advanced or loaned, but both the ability to pay and resources of the Mississippi Choctaws negative a positive assertion that the balance will not and cannot be paid.
The record establishes the source from which the communal funds of the nation arise, viz, from coal royalties, the sale of unallotted lands, timber, mineral deposits, right-of-way to railroads, from damages occasioned by defective pipe lines passing through tribal lands, and from other *56 sources. The Mississippi Choctaws own their individual allotments, and their right to per capita distribution oí tribal funds remains unimpaired. In no event could the plaintiff recover more than the unpaid balance of reimbursement money, and this fact alone precludes the intent of Congress to appropriate the funds of the nation to discharge a debt of the Mississippi Choctaws.
The petition is dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; LittletoN, Judge; and GeeeN, Judge, conc'ur.